USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   12/9/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X
UNITED STATES OF AMERICA,                    :
                                             :       S13 15-CR-537 (VEC)
            -against-                         :
                                             :
RASHAAD CONYERS et al.,                      :       OPINION AND ORDER
                                             :
                             Defendants.      :
--------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Defendants, alleged members and associates of the "Young Gunnaz," also known as the

"YGz," a street gang operating primarily in the Bronx, New York, have been charged principally

with racketeering conspiracy in violation of 18 U.S.C. § 1962(c).[1]  Various Defendants have

moved to dismiss the Indictment, in whole or in part, to suppress evidence, and for a severance.[2]

---

[1]       The indictment, returned on September 1, 2016 and numbered S8 15-CR-537 (the "S8 Indictment" or
"S8"),  also includes the following charges as to some but not all of the Defendants: murder in aid of racketeering in
violation of 18 U.S.C. § 1959(a)(1), assault and attempted murder in aid of racketeering in violation of 18 U.S.C. §§
1959(a)(3) and (5), conspiracy to commit assault in aid of racketeering in violation of 18 U.S.C. § 1959(a)(6),
narcotics conspiracy in violation of 21 U.S.C. §§ 841(a)(1) and 846, use of firearms in relation to a crime of
violence in violation of 18 U.S.C. § 924(j), use of firearms in relation to a violent racketeering conspiracy in
violation of 18 U.S.C. § 924(c), and bank robbery conspiracy in violation of 18 U.S.C. § 371.

          On December 7, 2016, the grand jury returned another superseding indictment, this one numbered S13 16-
CR- 537 ("S13"). Dkt. 590.  The S13 Indictment adds two new defendants and additional charges against certain of
the defendants.  The new charges and allegations in the S13 Indictment do not have any impact on the pre-trial
motions filed by the defendants and addressed *infra*.  For convenience, the Court cites to the S8 Indictment herein.

[2]       Several Defendants who filed pretrial motions—Paul Gilbert, Joseph Anderson, Anthony Scott, Rascarmi
Gallimore, and Corey Canteen—have since pled guilty.  Accordingly, their motions are denied as moot.  In addition,
Defendant Orenzo Harrell's motion to suppress statements is denied as moot because the Government does not
intend to introduce those statements at trial.  Harrell has informed the Court that he does not move to suppress a
non-recorded post-arrest statement that the Government does intend to introduce at trial.  Dkt. 558.

          On November 14, 2016, Ramel Matthews withdrew his motion to suppress without prejudice.  Dkt. 568.
Accordingly, the Court does not address his motion, which, if reinstated, would require an evidentiary hearing.

          Wendell Belle, Christopher Morales, and Rashaad Conyers have requested to join their co-Defendants
pretrial motions to the extent they are applicable, Dkts. 388, 396, 404 at 25, and that request is granted.

Some Defendants have also made discovery motions.  For the following reasons, each of the Defendants' motions is denied.[3]

## BACKGROUND

A group of approximately thirty YGz members and associates were charged with racketeering conspiracy based on their alleged racketeering activity, including drug trafficking, bank robberies, and various violent crimes, including murder.  Four murders in aid of racketeering are charged, and five of the Defendants charged with those murders are capital-eligible;[4] the remaining Defendants charged with those murders were juveniles at the time of the murder and therefore are not capital-eligible.

In September 2016, the Court divided the Defendants into two groups for trial, the first of which is slated to begin in January 2017 and the second in May 2017.  Dkt. 495.   Defendants' pretrial motions to dismiss, to suppress evidence, to sever, and for early or additional discovery are now pending before the Court.

## DISCUSSION

### I.   Motions by Moye, Conyers, and Bracy to Dismiss the Indictment as a Whole or in Part Are Denied

A defendant seeking to challenge the sufficiency of an indictment on a motion to dismiss faces a high hurdle.  *United States v. Post*, 950 F. Supp. 2d 519, 527 (S.D.N.Y. 2013).  "Pursuant to Federal Rule of Criminal Procedure 7, 'the indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'"  *United States v. Vilar*, 729 F.3d 62, 80 (2d Cir. 2013) (quoting Fed. R. Crim. P. 7(c)(1) (alterations

---

[3]     As noted below, the Court does not decide Bracy's motion to dismiss Count Five of the S8 Indictment.  Dkt. 489.

[4]     The Attorney General has not yet decided whether the Government will seek the death penalty against any of the capital-eligible defendants.

omitted)).  "An indictment is sufficient if it 'first, contains the elements of the offense charged

and fairly informs a defendant of the charge against which he must defend, and, second, enables

him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'"

*United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *Hamling v. United States*,

418 U.S. 87, 117 (1974)).  The Second Circuit has "consistently upheld indictments that do little

more than to track the language of the statute charged and state the time and place (in

approximate terms) of the alleged crime."  *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir.

1999) (quotation marks and citation omitted).  "'Unless the government has made what can fairly

be described as a full proffer of the evidence it intends to present at trial[,] the sufficiency of the

evidence is not appropriately addressed on a pretrial motion to dismiss an indictment.'"  *United*

*States v. Perez*, 575 F.3d 164, 166-67 (2d Cir. 2009) (quoting *United States v. Alfonso*, 143 F.3d

772, 776-77 (2d Cir. 1998) (alteration omitted)).

### A.    Moye's Motion to Dismiss Count One

Jason Moye moves to dismiss Count One, which charges racketeering conspiracy, on the

basis that it fails to allege adequately that the YGz enterprise affected interstate commerce.

Moye Mem. 3 (Dkt. 385).  Moye argues that the Indictment's "boiler-plate" reference to

interstate commerce is inadequate because it does not provide any factual allegations to support

the assertion that the YGz's activities affected interstate commerce.[5]  *Id.* at 3.  In addition, Moye

argues that the Indictment alleges conduct solely affecting local commerce because the

Indictment states that the YGz operated in the Bronx and does not allege how specific acts of

---

[5]     Moye points to the following language from the Indictment: "At all times relevant to this Indictment, the enterprise was engaged in, and its activities affected, interstate and foreign commerce."  Moye Mem. 3.

violence, gun possession, or drug dealing actually affected interstate or foreign commerce. *Id.* at 4-5.

Count One of the Indictment is sufficient. It tracks the language of the statute, including the provision setting forth the interstate commerce element of the offense.[6] It also alleges the approximate time and place of the crime charged.[7] The allegation in the Indictment that the YGz "operated principally in the Bronx," S8 Indictment ¶ 1, does not mean that the enterprise did not affect interstate commerce, but only that the enterprise was based in and the majority of its activities occurred in the Bronx.

In addition, Count One alleges that the YGz were engaged in drug trafficking, specifically the trafficking of crack cocaine, heroin, and marijuana. S8 Indictment ¶¶ 1, 3(a), 4(e), 5. It is well established that drug trafficking substantially affects interstate commerce. *Taylor v. United States*, 136 S. Ct. 2074, 2080 (2016) (holding that the production, possession, and distribution of controlled substances constitute a "class of activities" that, in the aggregate, substantially affect interstate commerce); *see also United States v. Guang Ju Lin*, 707 F. Supp. 2d 443, 447 (S.D.N.Y. 2010) (holding the indictment was sufficient because allegations that the racketeering enterprise engaged in drug trafficking sufficed to allege that the racketeering activity affected interstate commerce). Accordingly, the allegation that the YGz were engaged in

---

[6]    *Compare* 18 U.S.C. § 1962(c) ("It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.") *with* S8 Indictment ¶ 5 (Defendants were "persons employed by and associated with the racketeering Enterprise described above, namely, the YGz, which was engaged in, and the activities of which affected, interstate and foreign commerce, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to violate the racketeering laws of the United States . . . .").

[7]    S8 Indictment ¶ 5 ("From at least in or about 2005, up to and including in or about August 2016, in the Southern District of New York and elsewhere . . . ."); *id.* ¶ 1 ("The YGz operated principally in the Bronx, New York."); *id.* ¶ 3.d ("The Enterprise operated within multiple housing developments, including the Mott Haven Houses, Maria Lopez Plaza, and River Park Towers, all in the Bronx, New York.").

drug trafficking also adequately alleges the interstate commerce element of Count One.  Moye's

motion to dismiss Count One is denied. [8]

### B.    Conyers's Motion to Dismiss Count Fourteen

Conyers moves to dismiss Count Fourteen arguing that racketeering conspiracy does not

qualify as a crime of violence as required by the statute.  Conyers Mem. 13-14 (Dkt. 404).  Count

Fourteen of the S8 Indictment charges Conyers and others with possessing and discharging

firearms in connection with a crime of violence, namely the racketeering conspiracy charged in

Count One, in violation of 18 U.S.C. § 924(c)(1)(A).  That statute defines "crime of violence" as

an offense that is a felony and:

> (A) has as an element the use, attempted use, or threatened use of physical force against
> the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or
> property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).  Section 924(c)(3)(A) is commonly referred to as the "force clause," while

Section 924(c)(3)(B) is commonly referred to as the "residual clause" or as the "risk-of-force

clause."  *United States v. Hill*, 832 F.3d 135, 138 n.4 (2d Cir. 2016).

Conyers first argues that the residual clause of Section 924 is unconstitutionally vague

under *Johnson v. United States*, 135 S. Ct. 2551 (2015).  *Johnson* struck down the residual clause

in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B).  135 S. Ct. at 2557.

Conyers contends that the residual clause in Section 924 is similar, requiring the Court to

invalidate Section 924(c)(3)(B).  Conyers Mem. 17-19.  The Second Circuit has squarely rejected

Conyers's argument.  In *United States v. Hill*, the Second Circuit held that the wording of

---

[8]     Moye also moves to dismiss Count Fourteen, which charges use of a firearm in connection with the
racketeering conspiracy, on the grounds that the racketeering conspiracy charge on which it is based (Count One)
must be dismissed.  Moye Mem. 6.  Because Count One is not subject to dismissal, Moye's motion to dismiss Count
Fourteen is denied.

Section 924(c)(3)(B) differs materially from the residual clause of the ACCA and is therefore unaffected by *Johnson*.  832 F.3d at 145-50.[9]  Conyers does not dispute that a racketeering conspiracy, involving allegations of *inter alia* robbery, murder, and assault, is within the scope of the residual clause, assuming it is constitutional.  Participating in the racketeering activities of a gang that commits murders and robberies as part of its *modus operandi* "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 924(c)(3)(B).

Racketeering conspiracy is also a crime of violence under the force clause.[10]  According to Conyers, because use of physical force is not a required element of racketeering conspiracy, racketeering conspiracy is not a crime of violence under the force clause.  Conyers Mem. 21. Similarly, Conyers argues that because racketeering conspiracy does not require the Government to prove an overt act, there is no requirement that the government prove a violent act.  *Id.* at 22-23.

"Because racketeering offenses hinge on the predicate offenses comprising the pattern of racketeering activity, [courts] look to the predicate offenses to determine whether a crime of violence is charged."  *United States v. Ivezaj*, 568 F.3d 88, 96 (2d Cir. 2009).  "[W]here the government proves (1) the commission of at least two acts of racketeering and (2) at least two of those acts qualify as 'crime[s] of violence' under § 924(c), a § 1962 conviction serves as a predicate for a conviction under § 924(c)."  *Id.*  Likewise, a conspiracy may be a crime of violence where the conspiracy involves an agreement to commit a predicate crime that would

---

[9]    Conyers acknowledges that the Second Circuit's decision in *Hill* is binding on this Court but wishes to preserve this issue for appeal.  Conyers Mem. 17.

[10]    The Court is not required to address whether this racketeering conspiracy qualifies as a crime of violence under the force clause because it qualifies as such under the residual clause, but the Court considers Conyers's second argument nonetheless.

itself be a crime of violence.  *See United States v. Desena*, 287 F.3d 170, 181 (2d Cir. 2002); *see also United States v. Patino*, 962 F.2d 263, 267 (2d Cir. 1992) (noting that the Second Circuit has "rejected the argument that conspiracy, an inchoate crime, cannot be considered a crime of violence").  Thus, Conyers's argument would hold true only in the case of a racketeering conspiracy in which no violent acts are alleged, either as predicates or as the object of the conspiracy.

That is not this case.  This racketeering conspiracy includes numerous violent predicate offenses, including, *inter alia,* murder, attempted murder, robbery, and attempted robbery.  S8 Indictment ¶ 5.  Murder is undoubtedly a crime of violence under Section 924(c), and the Second Circuit has held that Hobbs Act Robbery is a crime of violence under Section 924(c), *Hill*, 832 F.3d at 137.

In short, this racketeering conspiracy is a crime of violence under both the force and residual clauses, and Conyers's motion to dismiss Count Fourteen is denied.

## C.     Bracy's Motion to Dismiss the Indictment[11]

Bracy moves to dismiss the S8 Indictment because he was a juvenile—under 18 years old—at the time he allegedly committed the charged crimes, and the U.S. Attorney General has not certified that there is a need to prosecute him in federal court in accordance with the Juvenile Delinquency Act ("JDA"), 18 U.S.C. § 5031 *et seq.*  Bracy Mem. 2-3 (Dkt. 494).  The Court agrees with the Government that Bracy's argument is based on an erroneous interpretation of the JDA.

---

[11]     This Opinion and Order does not resolve Bracy's motion to dismiss Count Five of the S8 Indictment, which charges him with murder in aid of racketeering under 18 U.S.C. § 1959(a).  Dkt. 489.  Bracy's contention that Section 1959 is unconstitutional as applied to him under *Miller v. Alabama*, 132 S. Ct. 2455 (2012), will be addressed by the Court in a separate opinion and order.

"[C]ourts have consistently held that a defendant who is alleged to have committed a crime before his eighteenth birthday may not invoke the protection of the Juvenile Delinquency Act if criminal proceedings begin after the defendant reaches the age of twenty-one." *United States v. Hoo*, 825 F.2d 667, 669-70 (2d Cir. 1987).  There is no dispute that Bracy was first indicted in this case after he turned twenty-one years old.  He was born in July 1994, Gov't Opp. 9 (Dkt. 514), and, therefore, turned twenty-one years old in July 2015.[12]  The Grand Jury first returned an indictment against him approximately five months later in December 2015.  Dkt. 31. The JDA's protections, therefore, are not available to Bracy.

In addition, the JDA does not apply to Bracy because he is alleged to have continued to participate in the racketeering conspiracy well into his adult years.  "It is well established that federal courts have jurisdiction over conspiracies begun while a defendant [is] a minor but completed after his eighteenth birthday.  'The [JDA] does not . . . prevent an adult criminal defendant from being tried as an adult simply because he first became embroiled in the conspiracy with which he is charged while still a minor . . . .'" *United States v. Wong*, 40 F.3d 1347, 1365 (2d Cir. 1994) (quoting *United States v. Spoone*, 741 F.2d 680, 687 (4th Cir. 1984)). The relevant age for the purposes of the JDA is the defendant's age "at the time the substantive RICO or RICO conspiracy offense is completed . . . , [thus] an adult defendant may properly be held liable under RICO for predicate offenses committed as a juvenile." *Id.* at 1368.

The original indictment alleged that the racketeering conspiracy continued from 2005 through December 2015, S1 15-CR-537 Indictment (Dkt. 31) ¶ 5, some three years after Bracy's eighteenth birthday.  The S8 Indictment contains the same charges against Bracy but extends the

---

[12]     Bracy's birthday is not clear.  The Government represents that he was born on July 5, 1994, but also represents that he turned 21 on July 7, 2015.  Gov't Opp. 9.

duration of the racketeering conspiracy through August 2016, S8 Indictment ¶ 5, at which time Bracy was twenty-two years old.  Although the predicate acts allegedly committed personally by Bracy occurred when he was a juvenile—the stomping to death of rival gang associate Moises Lora in April 2012 and a shootout with a rival gang in November 2010, S8 Indictment ¶¶ 7.f, 7.m—because "a conspirator charged with racketeering conspiracy need not commit . . . the predicate acts . . . to be found guilty of the racketeering conspiracy," *United States v. Ciccone*, 312 F.3d 535, 542 (2d Cir. 2002) (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)), Bracy can be charged as an adult so long as he participated in the alleged racketeering conspiracy after he was eighteen years old, regardless of whether he personally participated in any of the charged predicate acts after his eighteenth birthday.  *See Wong*, 40 F.3d at 1367 ("[T]he JDA regulates jurisdiction with respect to the charged offense (here, substantive RICO and RICO conspiracy), not the individual acts comprising the offense.  Thus, once having established that certain acts of the offense occurred after the defendant's eighteenth birthday, the entire case may be tried in accordance with the adult rules of procedure and evidence." (quotation marks and citations omitted)).  Accordingly, Bracy's motion to dismiss the S8 Indictment is denied.

## II.   Moye's Motion to Sever

Moye moves to sever his trial from all other Defendants[13] pursuant to Federal Rule of Criminal Procedure 14(a) on the basis of unfair prejudice and pursuant to Federal Rule of Criminal Procedure 8(b) on the basis of improper joinder of Defendants.[14]  Moye Mem. 9-11, 14-18.  Moye

---

[13]     Moye was originally scheduled to be tried in January 2017 with Co-Defendants Wendell Belle and William Bracy.  Dkt. 495.  In light of the Government's addition of new charges against Moye in the S13 Indictment, the Court has granted counsel's request that his trial be adjourned to May 2017.  Dkt. 593.  In either case, Moye would be tried together with a number of his co-conspirators.

[14]     Moye also moves to sever based on Co-Defendant statements.  Moye Mem. 12-13.  Moye's motion to sever is denied without prejudice.  The Court ordered the parties to brief *Bruton* issues separately after disclosure by the Government of the statements it intends to introduce into evidence that might raise *Bruton* objections.  *Bruton* motions for the defendants to be tried in January 2017, which, at that time, included Moye, were due on December

and his Co-Defendants, however, are properly joined, and Moye will not suffer unfair prejudice by proceeding to trial with them.

### A. Moye Is Properly Joined with His Co-Defendants Under Rule 8(b)

#### 1. Legal Standard

Rule 8(b) governs joinder of defendants.  It provides:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b).  Under Rule 8(b), "multiple defendants cannot be tried together on two or more 'similar' but unrelated acts or transactions; multiple defendants may be tried together only if the charged acts are part of a series of acts or transactions constituting an offense or offenses." *United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir. 1988) (quotation marks and citation omitted).  In other words, "joinder is proper where two or more persons' criminal acts are [(1)] unified by some substantial identity of facts or participants, or [(2)] arise out of a common plan or scheme." *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990) (quotation marks and citation omitted).

#### 2. Application

Moye argues that he must be severed from his Co-Defendants because the alleged overarching conspiracy "involves wholly separate schemes and specific individualized conduct . . . carried out by different participants under different factual circumstances," lacking any "common scheme or plan."  Moye Mem. 16.  Because Moye and all of his Co-Defendants are charged with participation in a single alleged racketeering enterprise—the YGz—Moye is

---

5, 2016.  Moye did not file a *Bruton* motion by that deadline.  Because Moye's trial date has now been adjourned until May 2017, his deadline to make a motion to sever based on *Bruton* is April 3, 2017.  *See* Dkt. 495 ¶ 16.

properly joined with his Co-Defendants.  "The mere allegation of a conspiracy presumptively satisfies Rule 8(b), since the allegation implies that the defendants named have engaged in the same series of acts or transactions constituting an offense."  *United States v. Friedman*, 854 F.2d 535, 561 (2d Cir. 1988) (quoting *United States v. Castellano*, 610 F. Supp. 1359, 1396 (S.D.N.Y. 1985)).  A number of courts have held joinder to be proper simply by virtue of substantive racketeering or racketeering conspiracy charges.  *See, e.g.*, *United States v. Triumph Capital Grp.*, 260 F. Supp. 2d 432, 440 (D. Conn. 2002); *United States v. Lino*, No. 00-cr-632 (WHP), 2001 WL 8356, at *22 (S.D.N.Y. Jan. 2, 2001);[15] *United States v. Gallo*, 668 F. Supp. 736, 747-48 (E.D.N.Y. 1987).  Accordingly, to evaluate a motion to sever under Rule 8(b) in a racketeering conspiracy case, the Court's "task is limited simply to determining whether the indictment properly alleged their participation in a RICO conspiracy."  *Friedman*, 854 F.2d at 561.

The S8 Indictment, which in this regard is not different from the S13 Indictment, sufficiently alleges Moye's participation in the YGz, including: his attempt to hide a gun used by former Co-Defendant Gilbert in an attempted shooting of a rival gang member on December 22, 2005, S8 Indictment ¶ 7(a); his participation in a shootout against rival gang members on September 26, 2009, during which two bystanders were shot, *id.* ¶ 7(d); his participation in a shootout against rival gang members on November 22, 2010, during which a rival gang member, Co-Defendant Bracy, and Bracy's associate were shot, *id.* ¶ 7(f); his participation in an assault and robbery of a rival gang member on January 24, 2011, with Co-Defendants Ramel Matthews, Kareem Lanier, Terrance Williams, Davoun Matthews, and Orenzo Harrell, *id.* ¶ 7(g); his

---

[15]     Citing *United States v. Bagaric*, 706 F.2d 42, 69 (2d Cir. 1983), *abrogated on other grounds by Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 259-60 (1994); *United States v. Weisman*, 624 F.2d 1118 (2d Cir. 1980), *abrogation on other grounds recognized by Ianniello v. United States*, 10 F.3d 59, 62 (2d Cir. 1993).

participation in an assault of Dykeem Etheridge later that same day with the same Co-Defendants, *id.* ¶ 7(h)); and his agreement with Co-Defendants Ramel Matthews and Brian Maynor to drive to rival gang territory on July 19, 2012, with a loaded gun to commit a shooting, *id.* ¶ 7(o).[16]   Moreover, Moye need not be aware of the full scope of the YGz's activities—such as the bank robberies with which he was not charged—in order to be properly joined with his racketeering co-conspirators.  *See Gallo*, 668 F. Supp. at 748 (holding the "RICO defendants here are presumptively properly joined in the indictment, even though some of them may have been unaware of the scope or nature of much of the enterprise's activities, and despite the fact that some of them may have been very minor players in the overall scheme of things"); *see also Triumph Capital Grp.*, 260 F. Supp. 2d at 440 (holding joinder is proper in a RICO conspiracy "even where the allegations against the defendants are factually distinct, the defendants had no direct contact with each other in relation to the alleged conspiracy and the acts of the defendants in furtherance of the alleged conspiracy occurred during chronologically distinct periods of time").  In short, the S8 Indictment adequately alleges that Moye participated in the YGz RICO conspiracy, and he is properly joined with his Co-Defendants under Rule 8(b).

## B.   Severance Is Not Required under Rule 14(a) to Prevent Substantial Prejudice

### 1.   Legal Standard

Even when a defendant is properly joined, he may seek to sever his case for trial if joinder is prejudicial under Rule 14(a).  Rule 14(a) provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

---

[16]   Although the Court concludes that the allegations in the S8 Indictment adequately allege Moye's participation in the YGz, the Court notes that the S13 Indictment has now added a charge that Moye was involved in the murder of Taisheem Ferguson.  S13 Indictment ¶ 18.

Fed. R. Crim. P. 14(a).  "Whether to grant or deny a severance motion is 'committed to the sound discretion of the trial judge.'"  *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998) (quoting *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989)).  "There is a preference in the federal system for joint trials of defendants who are indicted together."  *Zafiro v. United States*, 506 U.S. 534, 537 (1993).  "This preference is particularly strong where . . . the defendants are alleged to have participated in a common plan or scheme."  *Salameh*, 152 F.3d at 115.  The rationale, at least in part, for this preference is that:

> [i]t would impair both the efficiency and the fairness of the criminal justice system to require, in all these cases of joint crimes where incriminating statements exist, that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand.

*Richardson v. Marsh*, 481 U.S. 200, 210 (1987).

Given this presumption, a "district court should grant a severance motion only if there is a serious risk that a joint trial would compromise a specific trial right of the moving defendant or prevent the jury from making a reliable judgment about guilt or innocence."  *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993) (citing *Zafiro*, 506 U.S. at 539).  This is a difficult burden to meet.  *United States v. Lanza*, 790 F.2d 1015, 1019 (2d Cir. 1986).  "[D]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials."  *Zafiro*, 506 U.S. at 540.  Nor does "'the fact that evidence may be admissible against one defendant but not another  . . . necessarily require a severance.'"  *United States v. Rittweger,* 524 F.3d 171, 179 (2d Cir. 2008) (quoting *United Stats v. Losada*, 674 F.2d 167, 171 (2d Cir. 1982)).

### 2.    Application

Moye argues for severance primarily based on the danger of prejudicial spillover.  Moye Mem. 9.  He contends that he would be prejudiced because evidence that would otherwise not be

admissible against him, including evidence of violent acts, drug dealing, and robberies in which he was not involved, will be admissible at trial due to his Co-Defendants, which risks confusing and prejudicing the jury—particularly as to the jury's ability to distinguish the participation and knowledge of the various Co-Defendants. *Id.* at 9-10.

According to the Government, there will be a significant amount of overlap between the evidence admitted at trial against Moye and the Government's evidence against his Co-Defendants. Given the allegations of a single racketeering conspiracy, the same cooperating witnesses are expected to testify against Moye and his Co-Defendants and the same predicate acts—including the alleged murders—will be admitted against all Defendants as evidence of the existence of a conspiracy. Gov't Opp. 11 (Dkt. 557). *See United States v. Brady*, 26 F.3d 282, 287 (2d Cir. 1994) ("[P]roof of crimes committed by other individuals in a RICO conspiracy is relevant to show the existence and nature of the enterprise."). In addition, the Government intends to prove at trial that Moye was affiliated with the YGz based in part on his relationships with other Co-Defendants who are YGz members and who are slated to proceed to trial with Moye.[17] Gov't Opp. 11. "[E]vidence at the joint trial of alleged coconspirators that, because of the alleged conspiratorial nature of the illegal activity, would have been admissible at a separate trial of the moving defendant is neither spillover nor prejudicial." *Rosa*, 11 F.3d at 341 (collecting cases).[18] Accordingly, much of the evidence about which Moye is concerned would likely be admissible even at a trial where he would be the sole defendant.

---

[17]    While the Defendants referenced specifically by the Government have since pled guilty, the argument applies equally to the remaining Defendants who will be tried with Moye in May 2017.

[18]    *See also United States v. Diaz*, 176 F.3d 52, 103 (2d Cir. 1999) (holding no spillover prejudice as to defendant charged in RICO enterprise but not otherwise involved in eight murders committed as part of the racketeering enterprise because such evidence would have been admissible against all defendants to prove the racketeering  enterprise); *United States v. DiNome*, 954 F.2d 839, 844 (2d Cir. 1992) (holding no spillover prejudice because the evidence was relevant to the racketeering charges against all defendants and would have likely been admitted even if defendants had been granted individual trials).

In addition, despite Moye's contention to the contrary, to the extent there is evidence that is not admissible to prove the existence of the enterprise and that would not be admissible against Moye if he were tried individually, a limiting instruction will suffice to cure any risk of unfair prejudice.  *See United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003) ("[L]ess drastic measures—such as limiting instructions—often suffice as an alternative to granting a Rule 14 severance motion."); *United States v. DeVillio*, 983 F.2d 1185, 1192-93 (2d Cir. 1993) (limiting instruction addressed risk of prejudicial spillover).  The Second Circuit "has repeatedly recognized that joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible."  *United States v. Locascio*, 6 F.3d 924, 947 (2d Cir. 1993) (collecting cases).

For the foregoing reasons, Moye's motion to sever is denied.[19]

### III.   Discovery Motions[20]

#### A.   Conyers's Motion for a Bill of Particulars Is Denied

A defendant may seek a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f) in order to obtain sufficient information about the charged conduct to prepare for trial, to avoid surprise, and to prevent double jeopardy.  *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).  A bill of particulars is not a tool to preview the Government's case. *United States v. Triana-Mateus*, No. 98-cr-958 (SWK), 2002 WL 562649, at *5 (S.D.N.Y. Apr. 15, 2002) (citing *United States v. Gottlieb*, 493 F.2d 987, 994 (2d Cir. 1974)).  "A bill of

---

[19]     Moye also argues, citing to *United States v. Casamento*, 887 F.2d 1141, 1152 (2d Cir. 1989), that the length of the trial is a factor necessitating severance.  Moye Mem. 11.  The Government has estimated this trial to last approximately two months—less than the four months that caused the Second Circuit concern in *Casamento*—and the Court anticipates the trial will be shorter than the Government's estimate.

[20]     Gilbert and Moye move for disclosure under Federal Rule of Evidence 404(b).  Gilbert Mem. 24-25; Moye Mem. 19-21.  Given that a prior Court order already required the Government to make its Rule 404(b) disclosures no later than November 28, 2016, Gilbert's and Moye's motions are denied as moot.

particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (quotation marks and citation omitted).  "In deciding a motion for a bill of particulars, [t]he important question is whether the information sought is necessary, not whether it is helpful." *Triana-Mateus*, 2002 WL 562649, at *5 (quotation marks and citation omitted).  It is within the Court's discretion to make that determination and order a bill of particulars if appropriate.  *Bortnovsky*, 820 F.2d at 574.

     Conyers moves pursuant to Rule 7(f) for a bill of particulars, specifying, *inter alia*, the dates he allegedly entered and last participated in the racketeering conspiracy and the actions he allegedly took in furtherance of the conspiracy.  Conyers Mem. 11-13.  The charges in the indictment are sufficiently particular to advise Conyers of the specific conduct of which he is accused.  The S8 Indictment alleges the approximate dates and location of the YGz racketeering conspiracy, and for each predicate act, it provides the date, place, and nature of the event—such as murder, attempted shooting, or shooting in which rival gang or YGz members or innocent bystanders were injured.  The S8 Indictment identifies the specific predicate acts in which Conyers allegedly participated, including: (1) an August 10, 2007, shooting inside a clothing store in the vicinity of 2939 Third Avenue in the Bronx, during which Conyers shot a rival gang associate, S8 Indictment ¶ 7(b); and (2) a May 12, 2015, shooting in a rival gang's territory near 328 East 145th Street in the Bronx during which, in concert with other YGz members, Conyers fired a gun, *id.* ¶¶ 7(u), 26.  The indictment is supplemented by the voluminous Rule 16 discovery in this case, including charts summarizing acts of violence and controlled drug purchases, listing for each the date and location, the names of the involved Defendants, and a summary of what occurred.  Gov't Opp. 40-41.  Conyers also has the benefit of the enterprise

letter provided by the Government to the Defendants in the first trial group on November 28, 2016. The enterprise letter enumerates the specific criminal incidents the Government intends to prove at the January 2017 trial as proof of or background to the charged racketeering conspiracy. Dkt. 577.

### B.      Motions for Early Discovery and Brady, Giglio, and Jencks Act Material

Defendants Conyers and Moye have filed motions to compel discovery on a number of grounds. Conyers moves pursuant to Federal Rule of Criminal Procedure 12(b)(4)(b) for notice of any and all evidence the Government intends to use at trial that is discoverable under Federal Rule of Criminal Procedure 16. Conyers Mem. 24-25. Moye moves to compel *Brady* and *Giglio* disclosure, discovery of all pre-trial identifications, and asserts additional, specific supplemental discovery demands. Moye Mem. 18-19. Defendant Gilbert also moves to compel discovery of *Brady* and *Giglio* material, and early discovery—at least thirty days ahead of trial—of Jencks Act material, including disclosure of co-conspirator statements to be used against him at trial and the identities of the Government's witnesses. Gilbert Mem. 16-23, 25-26. Although Gilbert has since pled guilty, his Co-Defendants joined his motions to the extent relevant to them. *See, e.g.*, Dkts. 388, 396, 404 at 25-26. Because Gilbert's discovery motions could have been asserted in the first instance by the remaining Defendants, the Court will assume for purposes of analysis the fiction that Gilbert is still a part of the case and consider his arguments below.

The Government has represented—and the Court has no reason to doubt—that it is aware of its discovery obligations, including under *Brady* and *Giglio*, has complied with those obligations to date, and fully intends to continue to do so (including responding to Moye's supplemental demands). Gov't Opp. 53. The Government satisfies its burden under *Brady* and *Giglio* so long as it turns over information in time for its "effective use at trial." *See United*

*States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001).  The Government intends to produce *Giglio*

material in this case at least one week before the testimony of non-civilian and cooperating

witnesses and at least one day before the testimony of civilian witnesses.  Gov't Opp. 54.  The

defense has not provided any reason to believe that the facts and circumstances here are such that

it will be unable to use the *Giglio* material effectively if disclosed on that schedule.  *See United*

*States v. Trippe*, 171 F. Supp. 2d 230, 238 (S.D.N.Y. 2001) ("The usual practice in this district is

that the Government agrees to make impeachment information available to the defense . . . at

least one day before the Government witness is called to testify.").  The Government will

produce Jencks Act material at the same time, Gov't Opp. 53, and the Jencks Act precludes the

Court from compelling disclosure of such materials before the relevant witness testifies at trial.

Similarly, Gilbert has not established that early disclosure of the identity of government

witnesses is necessary.  The Court may order early disclosure of witnesses on a "'specific

showing that disclosure [is] both material to the preparation of the defense and reasonable in

light of the circumstances surrounding the case.'"  *United States v. Bejasa*, 904 F.2d 137, 139-40

(2d Cir. 1990) (quoting *United States v. Cannone*, 528 F.2d 296, 300 (2d Cir. 1975)).  Gilbert has

not given any reasons to support his motion for early disclosure or provided any basis for the

Court to conclude that disclosure in the ordinary course is inadequate to this case.  Moreover,

early disclosure of witness identities is particularly disfavored in cases involving violent crimes,

like the racketeering enterprise charged in this case, because identifying the Government's

witnesses substantially in advance of trial may increase the risk of harm to them.  *See United*

*States v. Remire*, 400 F. Supp. 2d 627, 633 (S.D.N.Y. 2005) ("[C]ourts in this circuit are

especially reluctant to require the disclosure of witness lists in cases such as this one that involve

allegations of crimes of violence.").

The Government is not obligated to disclose to Gilbert statements of non-testifying co-conspirators that are not *Brady* material. *See United States v. Nachamie*, 91 F. Supp. 2d 565, 578 (S.D.N.Y. 2000) (collecting cases). To the extent such statements are discoverable under *Brady*, the Government has affirmed its intent to comply fully with its obligations, as discussed *supra*. While the Government suggests some statements of non-testifying co-conspirators may be referenced or reproduced in material otherwise discoverable under Rule 16, Gov't Opp. 46, the Government has also represented that it has produced all such material that it intends to offer at trial, Gov't Opp. 46-47, and that it intends to comply fully with its obligations under Rule 16. Gilbert "ha[s] identified no reason why the normal process of disclosure through the ordinary course of discovery, rulings on admissibility through motions *in limine*, and objections during the course of trial, are inadequate in this case" to identify co-conspirator statements. *United States v. Russo*, 483 F. Supp. 2d 301, 310 (S.D.N.Y. 2007).

Moye seeks disclosure of how he was identified as a member of the YGz conspiracy so that he can determine whether to seek suppression of any unduly suggestive pre-trial identifications. Moye Mem. 7. According to the Government, Moye was identified primarily by cooperating witnesses, based on their review of "setbooks" containing pictures of "dozens" of individuals.[21] Gov't Opp. 56. To the extent the pre-trial identifications are covered by the Jencks Act as testimonial records of a testifying witness, they will be turned over to Moye a week in advance, as the Government has already indicated. *See United States v. Marquez,* No.

---

[21] The Government has offered to produce the setbooks to defense counsel. Gov't Opp. 56 n.18. While the Court does not require the Government to do so, the Court encourages the Government's efforts to be proactive. Timely production of the setbooks will make it less likely that motions to suppress will be filed on the eve of trial. *Cf.* Fed. R. Crim. P. 12, advisory committee note, 1974 Amendments ("On some occasions the resolution of the admissibility issue prior to trial may be advantageous to the government. In these situations the attorney for the government can make effective defendant's obligation to make his motion to suppress prior to trial by giving defendant notice of the government's intention to use certain evidence.").

91-cr-451 (SWK), 1992 WL 88139, at *9 (S.D.N.Y. Apr. 22, 1992) (rejecting request for early

disclosure of pre-trial identifications because it would be included in Jencks Act materials).

Moye has not made any showing that this schedule will be inadequate for counsel to make a

suppression motion in the event one is appropriate.  *See id* (noting counsel may move to suppress

after disclosure of Jencks Act material).  To the extent Moye's request is for identifications by

non-testifying witnesses, he has not shown any independent basis for ordering such discovery,

and the Government has confirmed its compliance with Rule 16.[22]

Lastly, Conyers argues that Rule 12(b)(4)(B) requires early identification of all of the

evidence the Government intends to introduce at trial because it would be "unfair, unreasonable

and extraordinarily time consuming" for the defense to be required to "speculate" as to what

evidence the Government will ultimately use.  Conyers Mem. 24.  Rule 12(b)(4)(B) provides that

a defendant may:

> [I]n order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C),
> request notice of the government's intent to use (in its evidence-in-chief at trial) any
> evidence that the defendant may be entitled to discover under Rule 16.

Fed. R. Crim. P. 12(b).  Rule 12(b)(4)(B) does not impose an obligation on the Government to

identify for the defense potentially "suppressible" evidence, *see United States v. Norman*, No.

05-cr-30015 (DRH), 2005 WL 2739082, at *2 (S.D. Ill. Oct. 24, 2005), nor does it require the

Government to "preview" its case, *United States v. Swain*, No. 08-cr-1175 (JFK), 2011 WL

4348142, at *7 (S.D.N.Y. Aug. 16, 2011).

---

[22]     Moye's request that the Court set a hearing for his as-yet-unfiled motion to suppress is denied.  Defendants are not entitled to a *Wade* hearing under all circumstances. *See United States v. Viscioso*, 711 F. Supp. 740, 745 (S.D.N.Y. 1989).  "To be entitled to a hearing, a defendant must instead 'allege facts supporting his contention that the identification procedures used were impermissibly suggestive.'" *United States v. Williams*, No. 13-cr-580 (JMF), 2014 WL 144920, at *1 (S.D.N.Y. Jan. 15, 2014) (quoting *United States v. Berganza*, No. 03-cr-987 (DAB), 2005 WL 372045, at *10 (S.D.N.Y. Feb. 16, 2005)).  Moye has not identified any objectionable identification procedure used in this case, much less shown those procedures to be impermissibly suggestive.

Rule 12(b)(4)(B) is a procedural device intended to facilitate efficient pre-trial motion practice. *See United States v. de la Cruz-Paulino,* 61 F.3d 986, 994 (1st Cir. 1995); *see also* Fed. R. Crim. P. 12 advisory committee note, 1974 Amendment ("the rule is intended to be a matter of procedure").  It is not intended to expand the Government's discovery obligations under Rule 16.  *United States v. Vilar*, 530 F. Supp. 2d 616, 636-37 (S.D.N.Y. 2008) (rejecting Rule 12(b)(4)(B) motion because Government complied with Rule 16 obligations).  The Rule does not specify what information must be included in defense counsel's notice to trigger the Government's obligation.  Nonetheless, in order to adhere to Rule 12(b)(4)(B) without also unfairly expanding the Government's discovery obligations, courts have interpreted it to require the defense to identify *specific* discoverable material which it believes may be subject to a future suppression motion.  *See United States v. Ishak*, 277 F.R.D. 156, 160 (E.D. Va. 2011).  As the *Ishak* court explained, this approach is grounded in the Advisory Committee's note to the Rule, which describes the defense's notice as relating to the Government's intent to use "specified evidence" at trial.  *Id.* at 160 (quoting Fed. R. Crim. P. 12, advisory committee note, 1974 Amendment).  This approach furthers the underlying purpose of Rule 12(b)(4)(B) of avoiding unnecessary motion practice without forcing the Government to reveal its trial strategy in advance.  *See* 1A Andrew D. Leipold & Peter J. Henning, *Federal Practice & Procedure Criminal* § 195 (4th ed. 2008).

Conyers's motion is inconsistent with this approach.  Rather than identifying discoverable evidence that might be the subject of a motion to suppress, Conyers requests a complete accounting of "any and all" evidence that the Government may use at trial.  Much of the evidence Conyers asks to be identified is unlikely to be derived from searches or seizures that could implicate Fourth Amendment considerations.  That is particularly so in a case such as this

one, involving dozens of defendants, because Conyers lacks standing to move to suppress on

Fourth Amendment grounds evidence seized from others.  *See United States v. Kazarian*, No. 10-

cr-895 (PGG), 2012 WL 1810214, at *18 (S.D.N.Y. May 18, 2012) (rejecting co-conspirator

exception to Fourth Amendment standing requirements).  Even if Conyers's request were

sufficient to impose some affirmative obligation on the Government under Rule 12(b)(4)(B)—a

point belied by the text of the Rule—Conyers's request goes far beyond what would be

necessary to facilitate efficient motion practice.  Notice from the Government that it intends to

rely on some or all of the evidence gleaned from a search warrant would adequately inform the

defense that a motion is worth making—identification of specific evidence is unneeded.  Even

under the most generous reading of Rule 12(b)(4)(B), Conyers's request is overbroad, and his

motion is denied.

Given that the Government has and continues to fulfill its discovery obligations, there is

no need for the Court to further order early disclosure.  Defendants' motions requesting to

compel discovery and for early discovery are denied.

## CONCLUSION

For the foregoing reasons, Defendants' pretrial motions are denied.  The Clerk of Court

is respectfully directed to close the following docket entries: 383, 388, 392, 396, 397, 401, 402,

406, 493, 542, and 545.

**SO ORDERED.**

**Date:  December 9, 2016**
**        New York, New York**

**VALERIE CAPRONI**
**United States District Judge**